GOLDSTONE v BLOOMFIELD TOWNSHIP PUBLIC LIBRARY

Docket No. 262831. Submitted October 12, 2005, at Detroit. Decided November 8, 2005, at 9:10 a.m. Leave to appeal sought.

George H. Goldstone brought an action in the Oakland Circuit Court against the Bloomfield Township Public Library, seeking a declaratory judgment that would require the library to grant him and other residents of the city of Bloomfield Hills full, equal, and free admission to the same library materials, programs, services, and activities as the defendant gives to Bloomfield Township residents who support the library by local taxes or, in the alternative, to grant those services upon his payment of a fee. The court, Denise Langford Morris, J., granted summary disposition for the defendant, concluding that the defendant's determination to permit nonresident borrowing only in accordance with the execution of a contractual agreement with a nonresident's community does not violate Const 1963, art 8, § 9 and that it is not a denial of equal protection for the library to provide preferential treatment to its own residents and deny borrowing privileges to nonresidents. The plaintiff appealed.

The Court of Appeals *held*:

1. The language in Const 1963, art 8, § 9 provides no support for the plaintiff's assertion that libraries are constitutionally mandated to issue nonresident library cards or to make accessible all services of local libraries to nonresidents. Section 9 reveals a clear intent that libraries be available to all residents of the state, but subject to regulations adopted by their governing bodies. Because any public library is imbued with the discretion to adopt regulations pertaining to the library's governance, functioning, and the management of its resources, the language of § 9 does not provide unfettered or free access to that library.

2. MCL 397.206 provides for the free use of a library by the residents where the library is located. An adjacent township, city, or village may contract for the use of a library's services, and a contract of that sort entitles residents in the contracting township, city, or village to borrow books or enjoy full library services. MCL 397.216. The contract between the defendant and the city in which the plaintiff resided expired, terminating the plaintiff's privileges

at the defendant library. The State Aid to Libraries Act, MCL 397.551 *et seq.*, in providing an open door policy for libraries for the residents of the state, MCL 397.216(d), addressed local involvement in cooperative library networks by contract, and not the requirements for the use of individual library resources. The open door policy mentioned in subsection d does not equate with unfettered or unrestricted access to library resources.

3. Although MCL 397.561a permits a library to charge a nonresident borrowing fee, that statute does not mandate that full service be provided to a nonresident upon payment of a fee nor does it attempt to regulate the right of an individual or local library to govern individual borrowing or to establish service restrictions.

4. The plaintiff's claim of a violation of his equal protection rights under US Const, Am XIV and Const 1963, art 1, § 2 has been abandoned on appeal as a result of his failure to adequately cite authority and to adequately argue the issue.

Affirmed.

1. CONSTITUTIONAL LAW — PUBLIC LIBRARIES — NONRESIDENT USE.

A public library is imbued with the discretion to adopt regulations pertaining to the library's governance, functioning, and the management of its resources and is not constitutionally mandated to issue nonresident library cards or to make accessible all services of local libraries to nonresidents (Const 1963, art 8, § 9).

2. MUNICIPAL CORPORATIONS — STATE AID TO LIBRARIES ACT — ADJACENT ENTITIES — CONTRACTS FOR SERVICES.

Use of a library by the residents of the locality where the library is located is free; an adjacent township, city, or village may contract for the use of a library's services by the residents of that township, city, or village, and a contract of that sort entitles nonresidents to borrow books or enjoy full library services; the open door policy for libraries for the residents of the state, as stated in the State Aid to Libraries Act, concerns local involvement in cooperative library networks through such contracts, and not the requirements for the use of individual library resources; the open door policy does not equate with unfettered or unrestricted access to library resources (MCL 397.206, 397.216).

3. MUNICIPAL CORPORATIONS — PUBLIC LIBRARIES — NONRESIDENT USE — FEE.

Statutory permission for a library to charge a nonresident a fee for library use does not regulate the right of individual or local libraries to govern individual borrowing or service restrictions (MCL 397.561a).

*Robert E. Toohey* for the plaintiff.

*Seyburn, Kahn, Ginn, Bess & Serlin, P.C.* (by *Joel H. Serlin* and *Barry M. Rosenbaum*), and *Condit, McGarry & Schloff, PLLC* (by *Michael D. Schloff*), for the defendant.

Amici Curiae:

*Foster, Swift, Collins & Smith, P.C.* (by *Stephen O. Schultz* and *Sarah J. Gabis*), for the Michigan Library Association.

*Clark Hill PLC* (by *Robert Nyovich* and *Joseph C. Bennett*) for The Library Network.

Before: OWENS, P.J., and FITZGERALD and SCHUETTE, JJ.

FITZGERALD, J. Plaintiff, George H. Goldstone, is a resident of the city of Bloomfield Hills. He brought an action for a declaratory judgment that would require the Bloomfield Township Public Library to grant him and other residents of the city "full, equal and free admission to the same library materials, programs, services, and activities that [defendant] gives to Bloomfield Township residents who support their library by local taxes." This occurred after the city and defendant had been unable to agree on a service contract. The trial court granted summary disposition in favor of defendant, and plaintiff appeals as of right. We affirm.

FACTS

Defendant is a public library in Bloomfield Township. From 1964 to November 12, 2003, the library had a contractual agreement with the city that, for a fee, permitted city residents full access to the library. On November 12, 2003, the contract between the library

and the city expired as a result of their inability to agree on a contract fee. As a result of the expiration of the contract, plaintiff and other city residents can visit the library and have access to its materials on site, but are prohibited from borrowing library materials and from having full-access to online databases and other programs, services, and activities that are regularly available to township residents. In addition, borrowing privileges at 90 other area libraries are not available to plaintiff and other city residents because of the loss of the city's contractual relationship with the library.

On May 27, 2004, plaintiff requested a nonresident library card and offered to pay a borrowing fee. Defendant denied the request because plaintiff is not a resident of Bloomfield Township and resides in a city that does not have a service contract with defendant. Plaintiff then filed a complaint for declaratory relief, seeking a determination that defendant is required by Constitution or statute to issue plaintiff a nonresident library card and thereby give him access to the library and its resources equal to that afforded to township residents. While acknowledging defendant's right to impose a nonresident borrowing fee, plaintiff sought the court's determination of the statutorily mandated parameters and limitations on the fees that could be charged.

Following a hearing, the trial court denied plaintiff's motion for partial summary disposition and granted defendant's motion for summary disposition. The court ruled that the library's determination to permit nonresident borrowing only in accordance with the execution of a contractual agreement with a nonresident's community does not violate Const 1963, art 8, § 9 and that it is not a denial of equal protection for the library

to provide preferential treatment to its own residents and deny borrowing privileges to nonresidents.

I. CONST 1963, ART 8, § 9

Plaintiff argues that the trial court erred in determining that Const 1963, art 8, § 9 does not require defendant to allow plaintiff or other nonresidents to borrow books.[1] A trial court's decision on a motion for summary disposition under MCR 2.116(C)(10) is reviewed de novo. *Dressel v Ameribank,* 468 Mich 557, 561; 664 NW2d 151 (2003). Similarly, the interpretation, application, and constitutionality of statutes are questions of law that are reviewed de novo. *Eggleston v Bio-Medical Applications of Detroit, Inc,* 468 Mich 29, 32; 658 NW2d 139 (2003).

Plaintiff contends that the plain and ordinary meaning of Const 1963, art 8, § 9 requires public libraries to allow all state citizens, regardless of area of residency to borrow books. Const 1963, art 8, § 9 provides:

> The legislature shall provide by law for the establishment and support of public libraries which shall be available to all residents of the state under regulations adopted by the governing bodies thereof. All fines assessed and collected in the several counties, townships and cities for any breach of the penal laws shall be exclusively applied to the support of such public libraries, and county law libraries as provided by law.

The primary objective in interpreting a constitutional provision is to determine the text's original meaning to the ratifiers, the people, at the time of ratification. *Wayne Co v Hathcock,* 471 Mich 445, 468; 684 NW2d 765 (2004). While legal or technical terms should be

---

[1] For the sake of simplicity, use of the phrase "borrow books" in this opinion also encompasses those library services provided to residents, but not to nonresidents.

assigned their legal or technical meanings, to understand or discern the intent of those ratifying the provision, this Court's focus is to determine and effectuate the common understanding of the text at the time of its ratification. *Id.* at 468-469; see also *Phillips v Mirac, Inc*, 470 Mich 415, 422; 685 NW2d 174 (2004). Additionally, to clarify meaning, the circumstances surrounding the adoption of a constitutional provision and the purpose sought to be accomplished may be considered. *Comm for Constitutional Reform v Secretary of State*, 425 Mich 336, 340; 389 NW2d 430 (1986).

In support of his argument, plaintiff relies on the interpretation of Const 1963, art 8, § 9 in OAG, 1979-1980, No 5739, p 874:

> [T]he right of state residents to use the facilities of any public library includes not only the right to enter a public library and read books there, but the same right to borrow books that is offered to residents of the community in which the library is established . . . .

While informative, this interpretation is not dispositive. *People v Waterman*, 137 Mich App 429, 439; 358 NW2d 602 (1984).

The specific language of Const 1963, art 8, § 9 reveals a clear intent that libraries "be available to all residents of the state . . . ." But this mandate is not without restrictions in that libraries are authorized to impose "regulations adopted by the governing bodies thereof." Thus, a library is imbued with the discretion to adopt regulations pertaining to the library's governance, functioning, and management of its resources. This language does not coincide with plaintiff's interpretation of the provision to mean unfettered or free access.

Further, in contradiction to plaintiff's position, the Attorney General's interpretation of this provision does not require a determination that nonresidents are en-

titled to all public library privileges enjoyed by residents of the community where the library is located, subject only to imposition of a reasonable borrowing fee. A review of Attorney General opinions demonstrates an historical recognition of the authority of public libraries to govern and restrict the use of their resources. OAG, 1977-1978, No 5180, p 109, addressed the use of penal fines to pay for library services. In that opinion, it was recognized that

> [a] township or charter township is empowered to contract with any other governing body for any service for which it could by law provide for its residents. Because a township may provide a library for its residents in the manner authorized by law, it may therefore, when authorized, provide for library services by contracting with any governing body to provide those services . . . .

Implicit in this opinion is the recognition that full library services are subject to contractual agreements and that, absent such an agreement, nonresidents do not have unfettered access to library resources. And OAG, 1979-1980, No 5739, p 874, indicates in relevant part:

> [U]nder the constitutional mandate . . . the right of state residents to use the facilities of any public library includes not only the right to enter a public library and read books there, but the same right to borrow books that is offered to residents of the community in which the library is established *subject to reasonable regulations.* [Emphasis added.]

Additionally, it was recognized that "the framers intended that each local governmental unit which operates a public library may prescribe reasonable rules and regulations governing availability of its library services." *Id.* This recognition of restrictions on use, and the right of local libraries to establish their regulations,

was again recognized in evaluating interlibrary loan programs. In evaluating the imposition of fees on nonresidents for borrowing privileges at local libraries, the Attorney General has recognized

> that the framers intended that the constitutional grant of authority to adopt regulations relating to the availability of library services be restricted to those persons who resided in townships which do not have a public library and which are not under contract with a public library for the provisions of full library services for its residents.

> \* \* \*

> MCL 397.214 . . . empowers cities, incorporated villages and townships operating free public libraries to contract with townships for full use of such library by its residents . . . . [OAG, 1983-1984, No 6188, p 8.]

The opinion continued:

> Recognizing that the Legislature had implicitly authorized library boards to license potential borrowers of books, Const 1963, art 8, § 9 must be read to include authority to impose fees upon those nonresident users seeking to borrow from a library who are not eligible to receive full library services under existing contract with the library. [*Id.*]

The opinion recognizes that local libraries are authorized, not mandated, to impose fees, which coincides with the explicit language of Const 1963, art 8, § 9 permitting governing boards to determine the manner of regulating library resources.

A review of the historical perspective offered by the development and drafting of Const 1963, art 8, § 9 provides further support for the conclusion that this constitutional provision does not require public libraries to permit nonresidents to borrow books. Notably, Const 1963, art 8, § 9 is a revision of a prior provision requiring the existence of "at least 1 library in each

township and city . . . ." Const 1908, art 11, § 14. Acknowledging the financial impracticality of requiring every community to establish and maintain its own library, coupled with the reality that the constitutional provision had not been enforced, the delegates drafting what was to become Const 1963, art 8, § 9 expressed an intent to maintain the current system of libraries "without fixing how or where the libraries themselves shall be organized." 1 Official Record, Constitutional Convention 1961, p 822. The specified intent was to "make libraries more available to the people their services may be expanded through cooperation, consolidation, branches and bookmobiles." *Id.* In discussions pertaining to the proposed language of the provision, a delegate succinctly indicated a concern that

> [b]y implication at least, the phrase, "which shall be available to all residents of the state," means to me that the service of any library shall be available, free, to all residents of the state, or at least shall be available to everyone on the same terms as offered to the residents of the municipality which operates the library. Now, I feel that this may very well place an undue burden upon existing libraries. [*Id.* at 834.]

Elaborating, the delegate noted, by way of example, that although Bay City maintained a local library supported by its taxpayers, it was surrounded by a number of communities whose populations in total would exceed that of Bay City, which he feared would, by the language of the provision, "be obligated to provide free library services for these adjoining townships and . . . city." *Id.* The delegate argued that it would be inequitable for Bay City to provide the substantial majority of the funding to maintain its public library without commensurate financial contribution by nonresidents utilizing and accessing the same library services. *Id.*

In response, drafters of the provision indicated that their intent was to have the constitutional provision be "as broad and general in scope as possible," *id.* at 835, while recognizing that

> [t]he present language emphasizes that "public" libraries will be "available" to residents without fixing how or where the libraries themselves shall be organized. The committee presumes that legislation may be written so that each library may make reasonable rules for the use and control of its books. [*Id.* at 822.]

Another delegate affirmed the understanding, indicating that the language of the provision, while assuring that libraries be "available . . . doesn't say free." *Id.* at 835. Another delegate noting the intent to assure availability emphasized this point:

> [T]he library services, whether . . . through branch libraries, bookmobiles or what else you have, may be extended to those residents of the state who are not now adequately provided with library services. But I repeat, that so far as working out the rules for individual libraries to govern the use and control of their books, the committee felt that this matter was and should be statutory. [*Id.* at 835.]

Analogizing the availability of public libraries to access to local courts, a delegate indicated:

> [T]he only thing that we are changing here is the fact that since it is not practical that every township have a library, we say that they shall be available to the citizens of the state of Michigan. . . . But remember, they must live in the jurisdiction. There are a lot of things that they have to qualify. Just because we say that it is available doesn't mean that there are no standards. [*Id.* at 836.]

Addressing concerns pertaining to the language of the proposed provision, before its acceptance, it was again acknowledged:

The committee on education's understanding is that this merely refers to regulations regarding the accessibility of libraries to the general public, and the committee assumes that the intent of the committee on style and drafting was that these governing bodies be of a local nature, . . . but that the intent of the committee on style and drafting would be that local governing bodies of these various public libraries would be able to pass reasonable regulations regarding the accessibility and the availability of their individual libraries to residents of the state; particularly, I suppose, in cases where the applicant for a book or a periodical was not an immediate resident of the locality. [2 Official Record, Constitutional Convention 1961, p 2561.]

The delegates agreed:

[T]here is nothing in the constitution which would permit a resident of any other part of the state to come into your library . . . and demand services which were contrary to the regulations which you laid down yourself for the use and control of your books. [1 Official Record, Constitutional Convention 1961, p 836.]

The language in Const 1963, art 8, § 9, when read in conjunction with the historical discussions elaborating on the intent of its drafters, provides no support for plaintiff's assertion that libraries are constitutionally mandated to issue nonresident library cards or to make accessible all services of local libraries to nonresidents.

### II. THE STATE AID TO PUBLIC LIBRARIES ACT, MCL 397.551 *ET SEQ.*

Plaintiff asserts that various statutory provisions, including, but not necessarily restricted to, those comprising the State Aid to Public Libraries Act (the Act), MCL 397.551 *et seq.*, require defendant to issue nonresident library cards.

1877 PA 164, regarding the establishment and maintenance of libraries was enacted "to authorize cities, incorporated villages, and townships to establish and maintain, or contract for the use of, free public libraries and reading rooms; and to prescribe penalties and provide remedies." 1877 PA 164, title. 1877 PA 164 § 6 is now MCL 397.206 and it provides:

> Every library and reading room established under this act shall be forever free to the use of the inhabitants where located, always subject to such reasonable rules and regulations as the library board may adopt; and said board may exclude from the use of said library and reading room any and all persons who shall willfully violate such rules.

This statutory provision restricts the "free" component of a local library to "the use of the inhabitants where located," thereby granting unrestricted use only to those individuals enjoying residential status. MCL 397.213(1) distinguishes between the existence of a free library and the "use of library services":

> Notwithstanding a contrary city, village, or township charter provision, a township, village, or city adjacent to a township, village, or city that supports a free public circulating library and reading room under this act may contract for the use of library services with that adjacent township, village, or city.

Indicating that nonresidents, subject to a contractual agreement with a public library, are entitled to borrow books or to enjoy full library services, MCL 397.216 provides:

> After fulfilling the contractual requirements, the people of a township, village, or city which has contracted for library services with another township, village, or city shall have all rights in the use and benefits of the library that they would have if they lived in the township, village, or city where the library is established, subject to uniform rules and regulations established by the board of library directors.

MCL 397.213 and MCL 397.216 would be completely unnecessary if public libraries were statutorily required to provide to nonresidents full access to all their services and materials on an unrestricted basis.

Plaintiff contends that the Act mandates that defendant, and other local libraries, be freely available for nonresident use. The purpose of the Act is "to provide for the establishment of cooperative libraries . . . ." 1877 PA 89, title. The Act does not purport to govern or direct the use or accessibility of local libraries by the general, or nonresident, public.

Plaintiff relies on MCL 397.555 to support his position. Specifically, plaintiff cites MCL 397.555(d), which references an "open door policy to the residents of the state, as provided by section 9 of article 8 of the state constitution of 1963." Plaintiff asserts that this provision, in conjunction with Const 1963, art 8, § 9, mandates free availability of local libraries. In arriving at this interpretation, plaintiff ignores the plain language of this statutory provision, the purpose of which is to delineate local library membership eligibility in a cooperative library system. For § d of the Act to apply, all eligibility requirements must be met. Specifically:

> To be eligible for membership in a cooperative library, a local library shall do all of the following:
>
> (a) Maintain a minimum local support of 3/10 of a mill on taxable value, as taxable value is calculated under section 27a of the general property tax act . . . .
>
> (b) Participate in the development of cooperative library plans.
>
> (c) Loan materials to other libraries participating in the cooperative library.
>
> (d) Maintain an open door policy to the residents of the state, as provided by section 9 of article 8 of the state constitution of 1963. [MCL 397.555.]

Primarily, this statute governs local library involvement in cooperative library networks and does not address, by language or implication, requirements for individual libraries to extend specified services to nonresidents. Further, the statutory provisions that comprise the Act relate solely to the "establishment of cooperative libraries" and the accessibility of state aid and support to those local libraries. Neither the title nor the content of individual provisions of the Act addresses requirements for the distribution or use of individual library resources.

Interpretation of the cited statutory provisions necessitates the use of well-established rules of statutory construction. Specifically, the purpose of statutory construction is to discover and give effect to the intent of the Legislature. To understand and discern our Legislature's intent, we must begin by examining the language of the statute itself. *Neal v Wilkes,* 470 Mich 661, 665; 685 NW2d 648 (2004). When statutory language is unambiguous, this Court is to presume that the Legislature intended the plainly expressed meaning and judicial construction is neither permitted nor necessary. *DiBenedetto v West Shore Hosp,* 461 Mich 394, 402; 605 NW2d 300 (2000). In addition:

> "It is a well-established rule of statutory construction that provisions of a statute must be construed in light of the other provisions of the statute to carry out the apparent purpose of the Legislature." . . . Provisions must be read in the context of the entire statute so as to produce a harmonious whole. Two statutes that relate to the same subject or share a common purpose are *in pari materia* and must be read together. [*American Federation of State, Co and Muni Employees v Detroit,* 267 Mich App 255, 269; 704 NW2d 712 (2005) (citations deleted).]

The requirement of MCL 397.555(d), that a library involved in a cooperative "maintain an open door

policy," is consistent with the interpretation of Const 1963, art 8, § 9 provided in part I of this opinion. An "open door policy" and "availability" indicate only accessibility to resources. This is accomplished by the library permitting access to resources on site. It does not mandate off-site access to nonresidents. An "open door policy" and "availability," merely by considering their plain and ordinary meaning, do not equate with unfettered or unrestricted access to library resources.

Plaintiff's contention that MCL 397.561a supports his contention that local libraries are required to provide full services upon payment of a borrowing fee is contrary to the actual language of the statutory provision. MCL 397.561a states:

> A library may charge nonresident borrowing fees to a person residing outside of the library's service area, including a person residing within the cooperative library's service area to which that library is assigned, if the fee does not exceed the costs incurred by the library in making borrowing privileges available to nonresidents including, but not limited to, the costs, direct and indirect, of issuing a library card, facilitating the return of loaned materials, and the attendant cost of administration.

First, this provision contains the term "may," which is routinely interpreted as being permissive or discretionary. Thus, the imposition of nonresident borrowing fees, as advocated by plaintiff, is not mandatory. Second, the statute implicitly acknowledges other provisions of the Act by noting that the borrowing fees may be imposed on individuals using cooperative library networks; it does not attempt to regulate individual or local libraries and their right to govern individual borrowing or service restrictions.

Further evidence that the imposition of restrictions on access to library materials for nonresidents is statu-

torily recognized and approved may be found in MCL 397.214, which provides, in relevant part:

> (1) Upon receipt of a petition signed by not less than 10% of the electors in any township based on the highest vote cast at the last regular election for township officers of the township, addressed to the township board, requesting that a meeting be called of the electors in the township, to consider making a contract with any township, city, or village supporting and maintaining a free public circulating library and reading room under this act, or under any special act, *for the use of its privileges by the residents of the township* . . . .
>
> (2) Notwithstanding any contrary provision in a township, city, or village charter, the library board of directors of a township, city, or village supporting and maintaining a free public circulating library and reading room under this act, or under any special act, *may enter into a contract with another township, city, or village to permit the residents of that other township, city, or village the full use of the library and reading room, upon terms and conditions to be agreed upon* [sic] *between the library board of directors and the legislative body of the other township, city, or village.* [Emphasis added.]

In accordance with rules for construction and interpretation of statutory language, the plain and unambiguous language of this provision indicates both the ability of a local library to govern and regulate its resources and that full rights to borrow and utilize library resources are restricted on the basis of residential status or participation in a contractual agreement. Additionally, the statutory language includes the term "may," which has historically been interpreted to be discretionary, as opposed to the term "shall," which is universally recognized as requiring mandatory adherence. *American Federation of State, Co and Muni Employees, supra* at 270 n 4. Thus, plaintiff's contention that statutory mandates exist pertaining to nonresident

borrowing privileges from local libraries is not supported by a review of the relevant statutory provisions, either standing alone or when read in conjunction with Const 1963, art 8, § 9.

### III. CONST 1963, ART 1, § 2; US CONST, AM XIV

Finally, plaintiff argues that defendant's refusal to grant him full access to the library's service, upon payment of a borrowing fee, is a violation of the equal protection clauses of Const 1963, art 1, § 2 and US Const, Am XIV. Plaintiff fails to adequately provide citation of authority or argument consistent with his claim of an equal protection violation. He fails to provide any relevant discussion pertaining to this issue and, instead, relies solely on his assertions regarding the interpretation of Const 1963, art 8, § 9 and MCL 397.551 *et seq.* "[T]his Court will not search for authority to support a party's position, and the failure to cite authority in support of an issue results in its being deemed abandoned on appeal." *Flint City Council v Michigan,* 253 Mich App 378, 393 n 2; 655 NW2d 604 (2002).

Affirmed.